THIEL v CRUIKSHANK

Docket No. 43851. Submitted November 8, 1979, at Grand Rapids.—
Decided March 5, 1980.

Richard Thiel and Donna Reitz, interested parties in the estate of
Homer H. Thiel, deceased, brought an action against Ray
Cruikshank, individually and as executor of the estate of Ho-
mer H. Thiel, deceased, seeking damages for the defendant's
breach of his fiduciary duties as executor of the estate. The
Osceola Circuit Court, Lawrence C. Root, J., awarded damages
to the plaintiffs based on a finding of the defendant's self-
dealing in the sale of estate property, a one-half interest in a
parcel of real property, to the defendant's son. The defendant
appeals, alleging that 1) he did not act improperly because he
did not purchase or even obtain an interest in the estate's
interest in the subject real property and, consequently, was not
guilty of self-dealing, and 2) the selling price to his son was fair
because it exceeded the land's appraisal value by $5,500 and
that he sold to his son in good faith. *Held:*

1. The trial court's finding that the defendant's son was
merely a vehicle through which the defendant benefitted from
the estate's one-half interest in the land in question is fully
supported by the evidence. The defendant simultaneously pur-
chased the other one-half interest from the deceased's sister
and some 48 days later the entire interest in the land was
resold for a tidy profit. Also, the length of time following the
defendant's alleged offering of the estate's interest in the real
property for sale and ultimately selling it to his own son was
very brief.

2. The defendant was obligated to seek the highest price
obtainable in selling the estate's interest in the real property.
The defendant's argument that the $12,500 figure for the
property in the inventory of the estate's assets represents the
fair market value and that the $18,000 figure charged his son
was a profit for the estate are belied by the subsequent resale
to a third party for $25,000. There was no error in the trial

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur 2d, Executors and Administrators § 396.
[2] 31 Am Jur 2d, Executors and Administrators § 386.

judge's refusal to find that the sale to the defendant's son was for the best price obtainable. The defendant is not excused from the statutory consequences of his self-dealing.

Affirmed.

1. Executors and Administrators — Sale of Real Property — Statutes.

The executor of an estate is obligated to seek the highest price obtainable when selling the estate's interest in real property (MCL 709.20; MSA 27.3178[480]).

2. Executors and Administrators — Sale of Real Property — Fiduciary Self-Dealing — Statutes.

Any sale of real property which is in probate and made contrary to a statute prohibiting the fiduciary making the sale from having any direct or indirect interest in the purchase renders the sale and resulting deeds voidable only, notwithstanding the contrary statutory language (MCL 709.27; MSA 29.3178[487]).

*Thompson & Weger* (by *David L. Porteous),* for plaintiffs.

*Talhelm & Smith,* for defendant.

Before: V. J. Brennan, P.J., and Beasley and G. E. Bowles,* JJ.

Beasley, J. In a nonjury trial, the trial court awarded plaintiffs damages in the sum of $7,000 based on defendant's breach of his fiduciary duties as executor of the estate of Homer H. Thiel, deceased. The case was heard upon a settled record without the taking of testimony, both parties stipulating that the trial judge should decide the case by reviewing depositions, exhibits, briefs and the probate court file. Defendant appeals as of right.

The record indicates that on August 30, 1974, defendant executor filed an inventory listing the estate's undivided one-half interest as tenant in

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

common in an 80-acre parcel of real property located in Hersey Township in Osceola County as having an appraised value of $12,500.

On September 20, 1974, pursuant to a power of sale contained in the will, defendant, as executor, sold the estate's interest to his son, at private sale, for $18,000. On the same day that defendant's son bought the land, defendant, acting individually and not as executor, purchased the other undivided one-half interest in the land from decedent's sister, Hulda Thiel, for $18,000. The money for the two purchases was obtained from a bank to whom defendant and his son gave a joint note for $36,-000. On November 7, 1974, some 48 days after these transactions, defendant and his son sold the entire parcel to another party for $50,000 but none of this profit went to the estate.

This sale was on a land contract with a down payment of $14,500, the balance, with interest at the rate of 8% per annum, payable in monthly installments of $250 or more. Defendant's deposition indicates the land contract payments are split equally between defendant and his son.

Plaintiffs, who are interested parties in the estate, claimed that defendant breached his fiduciary duty to the estate when he sold the estate's undivided one-half interest in the subject real property to his son. Plaintiffs claim that the purchase price paid by the son was substantially lower than what the land would have brought if actively offered on the open market and that, therefore, defendant must account to the estate for what the estate would have received but for defendant's self-dealing, *i.e.,* the highest price obtainable, namely, $25,000, less the amount actually paid to the estate, namely, $18,000.

On appeal, defendant claims that he did not act

improperly because he did not purchase or even obtain an interest in the estate's interest in the subject real property and, consequently, was not guilty of self-dealing. He also claims the selling price to his son was fair because it exceeded the appraised price by $5,500 ($18,000 was the sale price to his son and $12,500 was the appraised price), and that he sold to his son in good faith.

The trial judge filed a thorough written opinion making findings of fact and conclusions of law upon which the judgment for plaintiffs was based. After careful review, we affirm the trial court's judgment in favor of plaintiffs.

First, we find defendant's claim that the trial court erred when it found self-dealing, as only defendant's son derived benefit, to be without merit.

The relevant statutes provide:

"The fiduciary making the sale shall not directly or indirectly purchase, or be interested in the purchase of any part of the property so sold, and all sales made contrary to the provisions of this section shall be void * * * ."[1]

The trial court found:

"* * * [T]he facts present a fairly clear case of an Executor dealing in a property of an estate in such a way that he has received the benefit. It is the holding of

---

[1] MCL 709.27; MSA 27.3178(487). See also:

MCL 704.35; MSA 27.3178(286): "Every fiduciary shall be liable to any interested party for any loss to the estate * * * through self-dealing * * *."

MCL 704.37; MSA 27.3178(288): "* * * Except with the written approval of the probate court, a fiduciary in his personal capacity shall not engage in any transaction whatsoever with the estate which he represents, * * *. A fiduciary in his personal capacity shall not personally derive any profit from the purchase, sale or transfer of any property of said estate.

this Court that such is the case here even though the actual sale of the Estate property was by the Defendant to Rex Cruikshank, his son. The totality of the circumstances surrounding this transaction are such that it can lead only to the conclusion that these cross-transactions, whereby the Defendant acquired Hulda Thiel's interest in the property and his son acquired the Estate's interest in the property, is such that it must be held that the Defendant indirectly purchased Estate property. As noted above, the two purchases occurred on the same day and the money for the purchases came from a single loan of $36,000.00. Furthermore, upon the sale of the property the down payment on the land contract, which apparently covered both interests, was used to pay off a portion of the note. Additionally, the payments under the contract are being split between the Defendant and his son on a 50/50 basis. Finally, in his deposition, the Defendant stated that he didn't plan to lose any money on the deal and that he would either sell the property or farm it himself. It is therefore apparent that the transaction was, from the start, one calculated to derive a benefit for the Defendant. The fact that the Defendant's son was the vehicle through which the defendant benefitted from the Estate's interest in the land is irrelevant given the circumstances here."

Defendant did not advertise the real property for sale, did not list the property with a real estate broker and did not even put a "For Sale" sign on the property. If, as defendant appears to say, he did not seek an outside sale because decedent's sister-in-law, Hulda Thiel, did not wish him to, then he violated his fiduciary duty to act in the best interest of the estate. In any event, her wishes would be no excuse for his self-dealing.

We find that the trial court's finding that defendant's son was merely a vehicle through which defendant benefitted from the estate's interest in the land is fully supported by the evidence. By selling the estate's one-half interest in the land to

his son and combining it with defendant's own almost simultaneously acquired other one-half interest in the land, a tidy profit was made upon resale. The length of time following the defendant's alleged offering of the estate's interest in the real property for sale and ultimately selling it to his own son was very brief. At the very least, serious question would arise as to whether defendant did, in fact, seek the highest price obtainable for the subject real property.

We further find that the trial court correctly pierced the transaction when it found that defendant personally benefitted from the sale of the land to his son, when the transaction is viewed together with the ultimate sale to the third party.

Next, defendant argues that since the price paid to the estate by defendant's son was above the probate appraisal, plaintiffs had the burden of proof to show that the price paid by the son was inadequate. Defendant further claims that he acted in good faith and that, under case law, good faith, fair dealing on the part of a fiduciary can be a defense to an alleged violation of MCL 709.27; MSA 27.3178(487).

In selling the estate's interest in the real property, defendant executor was obligated to seek the highest price obtainable.[2] His argument that the $12,500 figure in his inventory represents the fair market value and that the $18,000 figure charged his son was a "profit for the estate" are belied by his sale to a third party for $25,000 (one-half of the $50,000) within the same time span. It strains credulity for defendant to claim within the circumstances of this case that his sale to his son was for the best price obtainable. We find no error in the trial judge's refusal to so find.

---

[2] MCL 709.20; MSA 27.3178(480).

*In re Tolfree Estate*[3] is instructive in this connection. In *Tolfree,* the three executors deposited estate funds in a bank owned and controlled by one executor. The bank failed and went into bankruptcy. The Court held that had the estate been closed within the time limited by the statute, the loss resulting from the failure of the bank in which the estate money was kept would not have occurred. On this basis, the Court held each executor liable, saying they were charged equally with performance of duties imposed by law and that none may escape liability on the grounds that he left it to his coexecutors to take action.[4]

Citing an earlier case,[5] the Court said:

"Good faith is a defense, where a trustee, acting within the limits of his powers with proper prudence and diligence, commits mere mistakes or errors of judgment, but is not a defense where a trustee disregards the limits placed upon his power by law or by the trust instrument."

This is not a case where an executor commits a mere mistake of judgment. On the contrary, as indicated, defendant was guilty of self-dealing in violation of the statute.[6]

In this connection, the trial court concluded:

"Taking this transaction as a whole, looking at the unreasonableness of the Defendant's efforts to sell the property, the chronology of the transactions and the apparent inadequacy of the consideration paid,[7] this

---

[3] 347 Mich 272, 282-283; 79 NW2d 629 (1956).

[4] *Id.,* 287.

[5] *MacKenzie v Union Guardian Trust Co,* 262 Mich 563, 588; 247 NW 914 (1933).

[6] MCL 709.27; MSA 27.3178(487).

[7] Earlier, the court had taken judicial notice that valuations for purposes of probate are generally low.

Court is not in a position to say that the Defendant has met his burden of proof in establishing a defense to the Plaintiffs' prima facie case. It is therefore the holding of this Court that the Defendant committed an act of self-dealing and that he must account to the Estate for any benefit he received as a result of that conduct."

It should be noted that this is not a case where attack is made upon the validity of the conveyances. Plaintiffs here seek only to recover the amount rightfully accruing to the estate, but for defendant's self-dealing.

Thus, this is not a case like *Carpenter v Mumby*[8] where the result hinges upon interpretation of the word "void" in the prohibition against self-dealing statute. For purposes of decision here, we will adopt the *Carpenter* rule, which is most favorable to defendant, namely, that transactions in violation of MCL 709.27; MSA 27.3178(487) are merely voidable, not void. Further assuming[9] that the burden of proof is on plaintiffs, we would nevertheless believe the evidence here compels the conclusion that defendant did not obtain the highest price obtainable and, thus, is not excused from the statutory consequence of his self-dealing.

In summary, we find that defendant engaged in self-dealing in violation of the statute, that defendant failed to obtain the highest price obtainable for the subject real property, that by defendant's self-dealing, the estate was deprived of $7,000 which it would otherwise have received, and that defendant has not demonstrated such good faith and fair dealing as would excuse defendant's self-dealing.

Affirmed, with costs.

---

[8] 86 Mich App 739; 273 NW2d 605 (1978). Other cases where the void, voidable issue seems present are *Newton v Old-Merchants National Bank & Trust Co*, 299 Mich 499; 300 NW 859 (1941), *Wright v First National Bank of Monroe*, 297 Mich 315; 297 NW 505 (1941), and *Ketchum v Ketchum*, 177 Mich 100; 143 NW 25 (1913).

[9] We do not believe such rule is, in fact, applicable here.